and Mrs. Tuohy. It's good to see you again. And you've reserved two minutes for rebuttal. Is that correct? That's correct, Your Honor. Thank you so much. When you are ready, I'd love to have you again. Good morning. Thank you. May it please the Court. The District Judge of Maher's closed file, which intruded upon his reasonable expectation of privacy in the file that had not been fully frustrated by Google's hash scan, and it constituted a trespass upon a protected area, his email account. We're seeking to have this Court adopt the analysis in Wilson over the analysis in Miller and Reddick. Can I ask you to take a step further back? Can you help me harmonize Walter and Jacobson? Yes. What do you think together, what is the proposition of law they stand for together? Well, both together work to state that when a private search happens, that's not covered by the Fourth Amendment when the results of that search are shared with the government unless the government exceeds the scope of the original search. And we believe that opening a file that's based on a hash match exceeds the scope of the private actors. And why is that? So obviously the Fifth Circuit thought, and the Tenth Circuit seemed to have a lot of, they put a lot of time and effort and analysis into the virtual certainty. Yeah. Like, so tell me how that fits into your analysis. Okay. So the virtual certainty that came through Jacobson, I think it's really important that we have to focus on the context of how that language developed. And the context was human to human behavior, which we don't have here. So you had FedEx employees who opened a damaged box. In both those cases, you know, they involved packages. Correct. And the question was what was inside. Yes. Now, you know, 40, 45 years later, we're dealing with a digital file and the hash is really indeed like a digital fingerprint. So why, you know, isn't this a different situation? It's a different situation because, as Wilson pointed out, the hash match is based upon someone else's file from the past based upon... But there's a virtual certainty that this is going to be the same image. Well, that is Miller's position. But no one knows until the file is opened what it contains. So, for example, if the officer, both officers in their warrant applications had not opened the file, they would not have been able to describe the image and say that it constituted child pornography under the law. So does it make a difference that the hash tag is not purporting to be a binary assessment of whether or not it's pornography, but rather it is trying to say with a certain amount of reliability that it is an image that somebody else at one point decided was pornographic? Sure. Or at least enough on the bubble to send it over to NEMIC? Right. But that just gives it like the suspicion based upon the hash scan. So the problem with that, of saying that they're the same thing, is we don't know that because they only keep a repository of hash values. They don't keep the actual images. So as Wilson pointed out, no employee like the FedEx employee in Jacobson could come forward and say, this is exactly what I saw too. Okay, so what do you think should have happened? Or at least let me tell you what I think you will tell me what should have happened. What should have happened is it gets flagged in Google. Google sends it over to NEMIC. NEMIC either opens it or it doesn't. If they open it, then that's one thing. But they didn't open it. They send it over. Then should they have gone to get the warrant? Yeah. And the only thing in the warrant they would have said was Google thinks it? So yes, and this is why it's important. But how does that help like Fourth Amendment jurisprudence of instead of having a trained officer make the assessment, yes, there's a there there, we are outsourcing it to someone like Google. Right. So the reason why it matters is because instead of a magistrate taking in all of this information, the police officer is deciding it's child pornography. So let me assume we agree with you that the initial opening should not have happened without a warrant. After they opened, they did go and get a warrant. And on an analysis that would delete the information that they got from their opening, they would still be left with what I'll call the Google hashtag report about the prior pornography and this having the matching hashtag. Is it your position that that's not probable cause to then open it? I mean, I'm wondering why the warrant doesn't basic deleting what they learned from opening, why they still didn't have probable cause. Why they didn't have probable cause to search without opening it? No. Oh, sorry. Yes. You're saying that the warrant is infected by the by the warrantless search. Correct. How we would analyze that is by taking out of the warrant any information that came from the warrantless search. If I understand it correctly, what would be left would be that they would have told the magistrate, Google told us that they had found the same hashtag that had previously been used for pornography. And so I'm asking, is it your position that they didn't have probable cause based on that? Correct. And that I'm not sure I understand why you think so. So help me out. Okay. So but also in this application, they didn't talk about the hashtag at all. They just said Google, we got this image that Google said is child pornography and we looked at it and this is what it what it is. They never said it was just based upon like a hash scan. So like the hash value is just like a string of alphanumeric numbers. You don't think that that would have been enough that disclosing that would have been enough? I mean, you know, what I'm saying is at the start here, had they not opened it, you don't think they had enough information to get a warrant? Well, to open it? I don't. But I also think that that determination needed to be made by a magistrate who had the full picture, which they didn't. But no, I don't think that just based on the hash value without any background backstory on the the the the alleged virtual search. Even assuming that's all right. What about the good faith exception? Why? Why? Well, I think definitely not good faith here because they didn't. I'm sorry. I didn't hear you. I'm sorry. I would say definitely didn't tonight. Any of what you said did not have good faith should not apply here because they they misled the magistrate by not including the the exact link. That's the whole point of having the magistrate is to say X, Y, Z specifically happened. And they they skipped all those steps. And they made assumptions that they shouldn't be making that police officers shouldn't be making. This should be left to the magistrate to make these good faith. How is that reckless or grossly negligent? Right. I mean, at best, it's incomplete. Maybe if somebody read it, it could be misleading. But it's grossly. Well, because the the cyber tip. OK, so we're we're dealing with a cyber tip report that is just bare bones. All it says is an image of a parent. Child pornography unconfirmed was stored in the Google Gmail infrastructure. So you're asking us to to to find as a matter of law that it would be grossly negligent for them to have gotten a or gone to a magistrate with a warrant that would be a good faith exception to the warrant requirement. Why wouldn't the officers have that here? Because they misled the magistrate about the investigation. Well, they wouldn't warrant at all. I mean, I'm talking now about the first warrantless search. Yes. Why wouldn't that be covered by the good faith exception, given that the two circuits to have ruled on it at that time had ruled that you did not need a warrant? Well, the law is not settled and it certainly isn't. Well, the law is not settled. It favors the finding of good faith, doesn't it? Or maybe not, because you would want them to err on the side of caution of like this is new technology and this circuit specifically hasn't ruled on it. And it would be better for them to err on the side of caution. But there were two circuits that it held you didn't need a warrant. I mean, it would seem to me that they could in good faith rely on that being the law existing at the time. I would disagree that respectfully, but that's not they did acknowledge that it's new technology. They're trying to apply this old doctrine to new technology. I'm sorry, I'm not following that. What do you think is the difference in the technology here from what the circuits were addressing in the Fifth and Sixth Circuit cases? Help me out. Oh, I'm sorry. I'm sorry. I didn't mean that that technology is different than what we have here. I'm just saying that in those cases they were discussing applying the doctrine with this new technology and trying to figure out how to do that. So I think that it's not as though this circuit had decided or the Supreme Court had decided the law was developing. And because the law was developing, I don't think that they could rely on that wholeheartedly. And the better option would have been to put everything in the affidavit for the magistrate, a neutral and detached magistrate to make that determination. So on that topic, I just want to get two things out there in the record. You're not disagreeing that we have precedent that says that not every statement in a warrant has to be true, right? Correct. And you're not disagreeing that neither investigator claimed that a Google employee had first visually reviewed it. At best, there could have been the implication is basically your argument. Right. But I just wanted to say that it shouldn't be that way. I just feel like the magistrate shouldn't be having, it shouldn't be implications. The whole point of that process under the Fourth Amendment is for the magistrate to have as much information to make that determination. And they have to be honest when they fill out about their investigation and how they got there. Okay. Well, we'll hear from you again. Thank you. And Mr. Guderian, am I pronouncing it right? Yes, ma'am. Thank you. I got it? Oh, good. Thank you. Good morning. And may it please the court, Michael Guderian on behalf of the United States. Your Honor, I guess I'll start at the end with good faith. I think the court can resolve this case on good faith. Both the initial review of the file that was warrantless, I think was reasonable at the time based on the only existing circuit court precedent in the United States, which said that you did not need a warrant to look at the file. Wilson comes afterward. I also think that the application for the warrant to search the account itself was not misleading. They were not grossly negligent in describing the information that they had received. But they do have an obligation to present potentially anything adverse, right, to the judge, to the issuing judge. That's our case in Ghanaius, right? Yes, Your Honor. Okay. And wouldn't the reliability and the fact that a person hasn't viewed it and made its own determination be potentially adverse? I don't think that's adverse information in this context, or at least I think they reasonably didn't think it was so, because they didn't have a reason to believe a warrant would have been required to look at it. And once they've looked at it, and then they describe it, they're now presenting a warrant application that includes a description of a child pornography file that they have viewed. And so I think it's really hard to say at that point a reasonable officer would think that Google's initial... Well, what about the fact that it said unconfirmed? I mean, shouldn't that have been something that should have been presented? No. Again, for the same reason, Your Honor. Here, they've reviewed it initially without a warrant. Once the officer lays eyes on it and determines in their experience that it's child pornography and then describes it to the issuing official, in this case they included that description. I think that's why investigators try to put descriptions of the files in applications to avoid this unconfirmed subjectivity sort of issue. So when they can, they describe it and they leave it to the magistrate judge or the issuing official if it's a state court judge. And they say, this is what it shows. If you believe that that's child pornography, this is where that was when we reviewed it and described it, there was no reason for them to think that they had to go back and explain that the cyber tip had said that it was unconfirmed. May I be sure I understand you? I'm looking now at page 844 of the appendix. And I think that what you're alluding to, and I want you to confirm this for me, is the sentence at 2A that on or about January 28th Google reported. Is that what you're saying would remain in the warrant even if you deleted the part about what the agents learned when they opened it themselves? So I think there's two points there, Your Honor. If the court is going to look at the warrant for the residue of probable cause absent the tainted information, yes. I think what should come out would be the end of that paragraph 2A. It was so let's stay with that first sentence. The first sentence tells the magistrate judge that Google reported that the account with New Bennings 8608 uploaded an image of child pornography on January 27th, 2020. Right? That's what you would have told the magistrate judge even if the government hadn't opened it itself. Yes. I mean, that's what it says here, Your Honor, is correct. That's how we do Frank's analysis, right? We delete the part that you can't. That's what's left. Now, if I understood your adversary, their position is that that's not good enough because it doesn't tell the magistrate judge that really what there were were hashtag matches. What's your response to that argument? This suggests that maybe somebody actually saw a child pornography image as opposed to because of the hashtag match suspecting that it was a child pornography image. So in this particular instance, the face of the cyber tip says a human employee at Google had reviewed a file characterized as child pornography. Where does it say that? The cyber tip or the... Where does it say it in the warrant? It does not say it there, but Your Honor... You're saying the warrant would be good enough even deleting the material learned from the warrantless search. And I'm looking to see if I could agree with that or not. Your adversary has said the first sentence is not enough because it doesn't say that anybody eyeballed the picture, nor does it tell the magistrate judge or the judicial officer that what they had was a hashtag match. So what's your response to the argument that for those reasons it's not sufficient? So I think it is still sufficient that you have a cyber tip that has identified reportable incidents of child pornography as it's described here, particularly because at least in this warrant they also then connect the account to a registered sex offender. Under those, at least under that particular set of circumstances... And is that told to the magistrate judge here? Yes, that's in D on the next page, 845. Ryan M. Marr, and then it says he's a level 2 sex offender after being convicted. And you're saying that part would have remained in the affidavit? Correct, Your Honor. Okay. Now, so is it your position that basically it's enough for an entity such as Google to tell the federal authorities, look, we've got somebody uploading child pornography and that person has a sex offender history. Those two facts, they establish probable cause to now go into the file that Google has identified. So there's two different points there, Your Honor. One is to look at it in the first instance without a warrant. The next one would be to go into the Google account itself. So this is the application to get into the account to search for child pornography crimes. I think it is sufficient even without the description of the file. At the time that they did this, they didn't think they needed a warrant to describe the file, which is why the description is in here. Right. I understand that's your argument. I'm asking these questions assuming we were not persuaded of that part of your argument. Right. But yes, Your Honor, that's the government's position is that what's left would be sufficient to have gotten this warrant, certainly on a good faith analysis, for them to have relied on the warrant that was issued to then go inside the account to do the search. The first sentence in A, I mean the government's position is that that sentence is literally true. Google reported that an image of child pornography was uploaded. I believe that's true, Your Honor, yes. I think this information... How do you respond to the counsel's argument that the government went beyond the private search because the private parties here did not actually look at this image, and the government by looking at this image went beyond the search? So I think this gets to the nub of the issue with automated searching and hash technology, and I think the Walter case is a useful jumping off point because there is a difference between a label on the outside of a file and a hash match to a digital fingerprint. In order for Google to have made the determination that this was a hash match, they are examining the content of a file to generate the hash that they then compare to a known image, in this case that they previously classified as child pornography. So there is a search of the content of the file. It is automated. A person may not be looking at it, but the computer is looking at it in essence. Correct, Your Honor. There is not a human employee at Google doing the search, at least the second time here, the first time the file was looked at previously outside of this context. A human did look at it. But Google is not just looking at the label on the file. It's not like the hash number just kind of follows along a file. You run an algorithm against it. Based on the content of the file, a hash number is generated. That's a search of the content of the file that Google has done. Again, it was done by a computer, not by a person. But they did look at it. Google, the company, looked at the content in this automated fashion. I think that's sufficient. No, go ahead. Please finish your answer. I think that's sufficient to frustrate any expectation of privacy that the person had in the content of that file with the existing jurisprudence that we have. I want to be sure I understand what you're saying, the Google search revealed. Once the agents looked at it, they were able to tell the magistrate that it depicts a prepubescent female who appears approximately six to seven years old and then goes on to explain how the child is depicted in a pornographic way. Are you telling me that the Google search knew all that, that it was a prepubescent female, that it was approximately six to seven years old and the nature of the pornographic depiction? Because otherwise my concern is that the agent search obtains more information than the Google search did. So help me out there. I think the description is more information in the sense that it is a human doing it rather than a computer doing it. I think you always, in this context, even if a person had looked at it but not described it, they said, Google says we re-reviewed it and confirmed it was child pornography. You still don't have a description of it. The investigator still obtains the description by looking at it and then describing to the court. Somewhere in the computer program is something that says to the computer, if you identify X, Y, and Z, you have identified child pornography, I assume. So are you saying that it said if you see prepubescent females under the age of whatever and you see the particular exposure here, that that's when you say, yes, we've got child pornography? Not in this case, Your Honor. That's my concern about the human search getting more information than the private search. I'm now confused. Why is that not a proper concern? In this particular case, I don't think it's a problem because Google does have a human person look at the file, make a decision, then they run their tool on it to create a unique digital fingerprint, then they search their infrastructure for content that is matching that. So a human is involved in this process and because of the virtual certainty of hash technology, we know that it's going to be the same file to a virtual certainty. That's not told to the magistrate judge though, right? That there was a human who looked at it and this is what Google's human employees saw. Correct, Your Honor. What the application for the warrant to search the account included was Google reported a... I do understand. I'm sorry, Your Honor. No, no, that was fine. You explained what I was going to ask if that's how it worked. So just to recap to make sure it's clear to all of us, at one point a Google employee identifies a file, says I think in my opinion, expert, not expert, this is child pornography, then Google takes a digital picture of it that it then turns into a series of pixels and hashtags and then every time they run through it, they say this is a copy of that image that I, that some person some time ago said was child pornography. I generally agree with that, Your Honor, but I would make one clarification which is I don't think that Google's or anybody's hashing technology creates anything new other than the hash value from an assessment of the content of the file that's unique to that file. So when you upload a file to Google's infrastructure, if it had previously run its hashing tool on a file of suspected child pornography. It says this is a copy. It says this is a copy and it does that by assessing the content of it because that's how hashing technology works. That's why they're going into the file. They're not merely looking at the outside of it for a label. They have to actually run their algorithm against the content of the file. For purposes of our evaluating whether this falls within the private search doctrine, can you tell us where in the record before the Google employee looked at the material after the computer had looked at it and discovered X, Y, and Z so that the district court here had knowledge that the Google employee saw everything that the agent saw? I'm not sure I saw that and I don't want to have to go on a hunt for it if it's in there. I think there's two, if I'm being responsive, which I'm going to try to do, I think there's two places in this record where that is reflected. I think one is on A29, which is within the cyber A29, yes, which was within the cyber tip itself, which was part of the record. And it says in the paragraph concerning company information, with respect to the portion of this cyber tip containing the heading was filed reviewed by company. When Google responds yes, it means that the contents of the file reported reviewed by a person concurrently to or immediately preceding the sending of the cyber tip. When Google responds no, which parenthetically was the case here, it means that while the contents of the file were not reviewed concurrently to making the report, historically a person had reviewed a file whose hash or digital fingerprint matched the hash of the reported image and determined it contained apparent child pornography. That's from the cyber tip, the same one that the investigators reviewed, which was part of the record here. I also think But that's a different file, right, whose hash matched the hash of the reported image. So somebody looked at the file number one, but we're concerned with now looking at file number two. It's got the same hash, but nobody at Google has looked at that. Correct. That is undisputed. And why should we assume that it's got the same content as file number one? And I think that's where the reliability of hash matching, as has been found by I think all of the courts, including even Wilson, hash not be the same file. Are we talking about then file number one having the same picture that file number two has? The same content. In this case, it's a picture. Picture. So when that picture is described, the pre-pubescent child under 5'6", it's that exact same picture that's in file number one. To a virtual certainty, yes. I think that's what that means, and that's supported by the cases. Okay. That's the first place you say that's revealed. And where's the second place in the record? I think that's also reflected at A109, where Google describes its proprietary hashing technology to tag apparent CSAM images. In this case, CSAM. Which number are you on so that I'm following? Paragraph 7, Your Honor. Okay, I'm with you. CSAM is an acronym. Typically, it's child sexual abuse material. An offending image, after it is viewed by at least one Google employee or contractor, is given a digital fingerprint hash that Google's computers can automatically recognize and is added to its repository of hashes of apparent child pornography files. And then in the next paragraph, they describe how this allows them to identify exact or very similar images of apparent child pornography to prevent them from circulating on Google's products, and that no image is added to their repository without it first having been visually confirmed by a Google reviewer. Okay. Thank you. Thank you so much. Thank you, Your Honor. Ms. Julie, you've got two minutes. Thank you. I think this case is like Walter. It's the misdelivered package that has labels and the person that the private party didn't view them, and then the police went farther and viewed the movies to determine that it was a crime under... Do you dispute their characterization just made now that if something has the same hashtag, it's the same image or the same content? So you don't have to look at it each time because that's how their algorithm works. If it's got the same hashtag, it's the same image. I'm disputing that conclusion because especially when the government's evidence included a declaration from Google. And in that declaration, that's on page 109 of the appendix, paragraph... 109? Yes. Paragraph 8. And in that paragraph, it says comparing these hashes to hashes of content uploaded to Google services allows Google to identify exact or very similar images of apparent child pornography to be posted on Google. And this really highlights the problem that Wilson was pointing out about Fourth Amendment rights being personal. You're relying on the very similar language suggestion? It might not be exact? Yeah, exact or very similar. Of apparent... So all the cases say the touchstone of the Fourth Amendment is reasonableness? Yeah. Isn't what happened here reasonable? What's unreasonable about it? Because whether it's very similar... I mean, it's a virtual certainty that it is the same image. If you printed out the two images, they would be identical. Well, we don't know that because Google doesn't keep the actual image. They don't have the image. So no one from Google like the person in Walter... No, but they don't... Google has the original image. No, they don't keep them. They just keep a repository of the hash values. Because by law, they can't... Keep child pornography. Yeah, so they have to destroy the image. I mean, it goes to the image at issue in this case... Even if it doesn't have the original image, given the technology and the odds that it's off, I mean, why isn't that reasonable? It's because, first of all, the government produced nothing of that nature other than the Miller case to say that in the court below. No one from Google came in and talked about their technology and how it's a virtual certainty. So all they have are these declarations and the cyber tip itself. All we're saying is just put all of that into the warrant application to search further. All these questions are up in the air and the police are making these determinations that impact a legal doctrine, like the private search doctrine. They shouldn't be deciding, oh, this is the same on their own when we're talking about historic behavior that we don't know when that hash was created. We don't know the Google employee. We can't talk to them like we can talk to all the other people that are involved in the cases that created this doctrine in the first place. It's like a computer and a human. And then you have a police officer making determinations about computer behavior and making assumptions. There's just too many assumptions that are that we don't know anything about. And every electronic service provider does it differently. That also matters. So I just think with all of those situations and problems, this is not a situation for application of the private search doctrine. This is a situation of facts that should be included in the warrant application for a neutral and detached magistrate to make. Thank you.